**SIGNED THIS: April 11, 2014**

_____

**Mary P. Gorman**
**United States Chief Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | Case No. 13-71645 |
| KELLEY MICHELLE BERGAE, | ) | |
| | ) | Chapter 13 |
| Debtor. | ) | |

## O P I N I O N

Before the Court is an Application for Compensation and Reimbursement Pursuant to 11

U.S.C. §330 filed by Attorney Robert Follmer on behalf of his firm, Ostling & Associates, Ltd.,

seeking an award of fees for representing the Debtor in this Chapter 13 case. The Application

requests approval of attorney's fees of $1417.50 and paraprofessional fees of $420 for a total of

$1837.50.[1] For the reasons set forth herein, the Application will be allowed in the amount of $612.50

_____

[1] The itemization attached to the Application, however, lists attorney's fees totaling $1365 rather than the $1417.50 claimed in the Application. The Court will proceed with its analysis utilizing the lower figure.

and denied in all other respects.

## I. Factual and Procedural Background

Kelley Michelle Bergae ("Debtor") filed her voluntary petition under Chapter 13 on August 26, 2013. The Debtor was represented in the filing by Attorney Nicolas Nelson of Ostling & Associates, Ltd. According to the Application, the Debtor's first consultation with Mr. Nelson occurred on June 10, 2013, and she attended a second appointment a week later "to review bankruptcy information worksheets and debt sheets." The Debtor and Mr. Nelson had two more appointments including one on July 8th at which the Debtor "reviewed and signed petition with Attorney Nicolas Nelson." On August 26th, Mr. Nelson reviewed a corrected petition and filed the same, along with the Statement of Financial Affairs ("SOFA"), schedules, and Chapter 13 Plan. At Paragraph 3 of the SOFA, Joyce D. Troxell, who is identified as the Debtor's mother, was listed as having been paid $1500 within the past year and as having an amount still owing of $5000. However, Ms. Troxell was not listed on Schedule F — Creditors Holding Unsecured Nonpriority Claims.

The meeting of creditors was held on September 25th. Mr. Nelson appeared at the meeting and charged time for reviewing and preparing for the meeting, attending the meeting, and discussing the outcome of the meeting with the Debtor. On the same date, the Chapter 13 Trustee ("Trustee") filed a confirmation report which stated that an amended plan and amended Schedule F were to be filed within fourteen days. Mr. Nelson also billed time for reviewing the confirmation report and for discussing with staff the changes that were needed. After neither an amended plan nor an amended Schedule F had been filed within the time allotted, the Court scheduled a hearing for November 12th.

On November 11th, Mr. Follmer charged time to review the file and prepare for the next day's hearing. Mr. Follmer appeared on behalf of the Debtor, and the hearing lasted less than one

-2-

minute. Mr. Follmer asked for and was granted fourteen days to file an amended plan and an amended Schedule F to add Ms. Troxell as a creditor. Mr. Follmer charged time for attending the hearing, travel time to and from the hearing, and "discussion with staff on outcome of hearing." Fourteen days later, Mr. Nelson filed the Amended Chapter 13 Plan in which there was no reference to either Ms. Troxell or to the debt owed to her. No amended Schedule F was filed. On December 10th, the Trustee filed an Objection to the Amended Chapter 13 Plan stating that Ms. Troxell was not listed on Schedule F, that Ms. Troxell was not listed on the mailing matrix, and that the claims bar date was due to expire on December 24th. The Court subsequently scheduled a hearing on the Amended Plan for January 14, 2014. Four days before the hearing, Mr. Follmer filed an Amended SOFA which again reported the Debtor's payment of $1500 to Ms. Troxell in the past year, but listed zero as the amount still owing along with a notation "debt forgiven."

At the hearing on January 14th, Mr. Follmer appeared on behalf of the Debtor. The Court inquired as to why the Amended SOFA was filed or, more precisely, why an amended Schedule F — which had been promised since the first meeting on September 25th — had never been filed. Despite having personally asked for fourteen days to file the amended Schedule F at the hearing on November 12th, Mr. Follmer offered no explanation as to why the proper procedure was never followed, but suggested that the Amended Plan would pay all creditors in full and that the debt to Ms. Troxell had been forgiven, so the error was harmless. The Court questioned Mr. Follmer's arguments, explaining that because Ms. Troxell was a creditor at the time the case was filed, the proper procedure would have been to list Ms. Troxell as a creditor and give her the notice to which she was entitled. The Court instructed Mr. Follmer that, although the claims bar date had run and the debt owed to Ms. Troxell would be excepted from the discharge the Debtor expected to receive, Ms.

−3−

Troxell was nonetheless entitled to proper notice and an amended Schedule F had to be filed.[2] The matter was continued to February 11th.

On February 10th, Mr. Follmer filed an Amended Schedule F which listed Ms. Troxell as the holder of an unsecured nonpriority claim in the amount of $5000. At the hearing on February 11th, Mr. Follmer appeared and represented that he thought that the Amended Plan could be confirmed. The Court again inquired about the debt owed to Ms. Troxell. Mr. Follmer explained that the Debtor still intended to repay it, but that Ms. Troxell didn't care if the debt was ever repaid. The Court asked Mr. Follmer if he had ever spoken with Ms. Troxell and he answered that he had not. After reviewing counsel's missteps and expressing concerns about how this case had been handled, the Court entered an Order confirming the Amended Chapter 13 Plan as filed with two exceptions. The Order confirming plan provided that the indebtedness owed to Ms. Troxell would not be discharged upon plan completion, and the standard "no-look" attorney's fee would not be allowed. Mr. Follmer was given until March 13th to file an itemized fee application.

On March 13th, Mr. Follmer filed the Application for Compensation. The Application seeks an award of attorney's fees for 7.8 hours at $175 per hour plus paraprofessional fees for six hours at $70 per hour for a total of $1785. Neither the Debtor nor the Trustee have raised an objection to the Application, although the Trustee did file a response which identified the mathematical error discussed in footnote 1 above. Thus, the matter is ready for decision.

---

[2] A Chapter 13 discharge extends only to debts provided for by a plan. 11 U.S.C. §1328(a). Unscheduled debts are not provided for by a plan and are not discharged. *See In re Plummer*, 378 B.R. 569, 572 (Bankr. C.D. Ill. 2007); *In re Trembath*, 205 B.R. 909, 914 (Bankr. N.D. Ill. 1997). Although schedules may be amended at any time, amending a schedule to add a creditor after a claims bar date has run is meaningless if the creditor cannot participate in plan distributions. Fed. R. Bankr. P. 1009(a); *In re Moore*, 247 B.R. 677, 686 (Bankr. W.D. Mich. 2000).

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. The particular issues raised here are core proceedings. *See* 28 U.S.C. §§157(b)(2)(A), (B).

## III. Legal Analysis

### A. Debtor's Attorneys Are Not Entitled to Full "No-Look" Fee

Debtors' attorneys are required to file complete and accurate disclosures of their fee agreements in every case. *See* 11 U.S.C. §329(a); Fed. R. Bankr. P. 2016(b); *In re Kowalski*, 402 B.R. 843, 848 (Bankr. N.D. Ill. 2009); *In re Jackson*, 401 B.R. 333, 339 (Bankr. N.D. Ill. 2009). Even with a client's agreement on the fee amount, attorney's fees for bankruptcy debtors remain subject to court review for reasonableness. *See* 11 U.S.C. §329(b); *Matter of Geraci*, 138 F.3d 314, 318 (7th Cir. 1998). In order for a court to make a determination of the reasonableness of any particular fee, debtors' attorneys are generally required to file itemized fee applications. *See* 11 U.S.C. §330(a); Fed. R. Bankr. P. 2016; *Geraci*, 138 F.3d at 317.

Because many debtors' attorneys offer their services at fixed or flat rates for the entire bundle of services generally needed to complete consumer cases, many courts have adopted a practice of allowing a presumptively reasonable amount — often called a "no-look" fee — to be charged by attorneys without requiring the filing of an itemized fee application in every case. *See In re Murray*, 330 B.R. 732, 733 (Bankr. E.D. Wis. 2005). The setting of a "no-look" fee relieves attorneys and courts from the time and expense of filing and reviewing fee applications for routine matters. *Id*. And because attorneys may still seek fees in amounts higher than the "no-look" fee simply by filing an itemized request, the practice of setting a fair "no-look" fee has generally been viewed as proper by courts and practitioners alike. *See Geraci*, 138 F.3d at 321; *Matter of Kindhart*, 160 F.3d 1176, 1178-79 (7th Cir. 1998).

−5−

A Standing Order Regarding Attorney Fees for Debtor's Counsel in Chapter 7 and 13 Cases
(Revised 1/1/14) for the Central District of Illinois, Springfield Division is currently posted on the
Court's website. The Standing Order provides that the maximum amount a debtor's attorney may
charge for fees in a Chapter 13 case without having to submit itemized time records is $3500. A
Standing Order Regarding Attorney Fees for Debtor's Counsel in Chapter 7 and 13 Cases (Revised
1/1/12) for the Central District of Illinois, Springfield Division was posted on the Court's website
when this case was filed and remains available for review on the website. The current and the
superceded Standing Orders differ in that the superceded Standing Order provided for a "no-look
fee" of $3300. Otherwise, the current and superceded Standing Orders do not differ in any respect
material to this case. In exchange for accepting a fixed or flat fee at or below the "no-look" amount,
attorneys must agree to perform all of the services listed in the Standing Order. Attorneys may elect
a different fee arrangement with their clients, but are then required to strictly comply with all
statutory requirements for fee approval. In this Court's experience, the vast majority of attorneys who
represent debtors in Chapter 13 cases opt for a flat fee and save themselves the time and expense of
filing fee applications. Notwithstanding this general practice, the Standing Order clearly provides
that, upon the request of an interested party or *sua sponte*, the Court may consider whether an
attorney's fixed fee should be reduced based on the circumstances of a particular case.

Here, the poor quality of work provided by the Debtor's attorneys caused the Court to order
that an itemized application for fees be filed and that the "no-look" fee would not be awarded. Once
that determination was made, it became Mr. Follmer's responsibility to file an application justifying
his fee request, and no presumption exists that he is entitled to the full "no-look" amount. The
Application filed by Mr. Follmer shows time entries for $1365 in attorney's fees and $420 in
paraprofessional fees. These amounts are, therefore, the maximum that may be awarded at this time.

–6–

**B. Debtor's Attorneys Have Not Justified Their Requested Fees**

Fee applications are reviewed under the standards set forth in §330(a)(3) which provides:

(3) In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including —

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. §330(a)(3).

According to the itemization attached to the Application, Mr. Nelson met with the Debtor four times, and also logged time for "review[ing] corrected petition[.]" In spite of having spent a good deal of time in consultation with the Debtor, and in spite of the fact that the Debtor clearly informed Mr. Nelson that Ms. Troxell was a creditor, Mr. Nelson failed to include Ms. Troxell on the Schedule F he prepared. In his narrative contained in the Application, Mr. Follmer places the blame for this error on the Debtor: "Unfortunately, Debtor failed to list her mother as a creditor when filling out the worksheets she had completed for her counsel to use for preparing bankruptcy

–7–

forms[.]"

But the failure to get this information onto Schedule F rests on counsel, not on the Debtor. It is not the responsibility of a lay person who hires bankruptcy counsel to figure out what information goes where on the required forms and schedules. When, as here, a debtor provides accurate information to an attorney, the attorney is responsible for preparing the required legal documents and for preparing them correctly.

Mr. Nelson — who the Application says began practicing law on May 9, 2013 — charged a total of 2.1 hours for appointments and work on the petition and schedules, yet failed to get Ms. Troxell listed on the original Schedule F. Had that initial mistake not been made, or had the mistake been corrected as soon as it was discovered, this case would have taken a far different course and generated a far better result. Perhaps Mr. Nelson's work should have been better supervised given that he had only been practicing law for a few months. In any event, the Court need not speculate about causation because the services were not beneficial and are, therefore, not compensable. *See* 11 U.S.C. §330(a)(3)(C). Mr. Nelson's pre-petition billed time of 2.1 hours is disallowed, as is his 0.2 of an hour for reviewing the confirmation report and discussing it with staff.

Mr. Follmer charged 0.4 of an hour to attend the November 12th hearing at which he asked for and was granted fourteen days to file an amended plan and an amended Schedule F. As described above, the hearing lasted less than one minute and the amended Schedule F was not only not filed within fourteen days of the hearing, but when it was filed, it was too late for the filing to be of any value to the Debtor. Accordingly, that time entry will be disallowed.

On December 10th, Mr. Follmer charged 0.5 of an hour to "[r]eview Trustee's Objection to Amended Plan[.]" The Trustee's Objection to the Amended Chapter 13 Plan was nothing more than a reiteration that the much-promised but yet-to-be-filed amended Schedule F had still not been filed, that Ms. Troxell was not listed on the mailing matrix, and that the claims bar date was coming up.

–8–

If Mr. Follmer had done what he should have done when he should have done it in this case, the objection would not have been necessary. Accordingly, that time entry will be disallowed.

On January 10, 2014, Mr. Follmer charged 0.1 of an hour to review the Amended SOFA prior to filing it. On January 14th, Mr. Follmer charged 0.4 of an hour to "[a]ttend hearing on Chapter 13 Amended Plan, travel time to and from hearing, and discussion with staff of outcome of hearing[.]" For the reasons detailed above, the filing of the Amended SOFA was a major misstep, and its filing delayed confirmation of the Amended Plan even further. The services were not beneficial at the time they were rendered. *See* 11 U.S.C. §330(a)(3)(C). Accordingly, these time entries will be disallowed.

On March 12th, Mr. Follmer charged a full hour for "[d]rafting narrative and review Application for Attorney Fees" and on March 13th, he charged 0.1 of an hour to "[f]ile Application for Fees[.]" Every other time entry in the Application for "filing" is properly shown as "NO CHARGE" because "filing" as used in the context here means "uploading" and is a clerical task. Accordingly, this "filing" charge is disallowed. Further, the hour charged for drafting the narrative and reviewing the Application is reduced by half because the narrative fell well short of what is required and evidences a lack of understanding of the professional standards required to represent debtors before this Court.

In his narrative, Mr. Follmer blames the Debtor for the failure to list Ms. Troxell on the schedules. But the Debtor disclosed the debt owed to Ms. Troxell to Mr. Nelson in response to a question about potential preferential payments. Answers to questions required to complete the SOFA may often disclose additional assets or debts. It is the job of the attorney reviewing the information, meeting with the client, and preparing the documents to determine how the information should be reported on the schedules and SOFA. If the Debtor was responsible not only to provide information about her financial affairs to her attorneys but also to explain to them how to prepare the legal documents, then the attorneys provided no more than a typing service. This Court has previously

– 9 –

admonished Ostling & Associates attorneys that client meetings must be more than perfunctory. *See*
*In re Brennan*, 2013 WL 4046447, at *9 (Bankr. C.D. Ill. Aug. 8, 2013). So, too, an attorney's
review of client information must be more than perfunctory and more than just a typing service must
be provided in order to justify an award of the full "no-look" fee.

Mr. Follmer's narrative also fails to explain why the required Amended Schedule F was not
timely filed after the initial mistake had been discovered. Mr. Nelson billed time to discuss the first
meeting with staff and to review the Trustee's confirmation report which pointed out the need for
the amendment. Mr. Follmer billed time to appear and ask the Court for time to prepare and file the
amendment and to discuss the hearing results with staff. But the Amended Schedule F was not filed
until more than four months after the first meeting and more than a month after the claims bar date
had run. And despite admitting personal knowledge of the problem when he appeared on November
12, 2013, Mr. Follmer waited until February 10, 2014, to file the Amended Schedule F. His time
records show that he never called or met with the Debtor in the interim — or at any time in the case
for that matter — to discuss getting the amendment on file and moving the case to confirmation.
Rather, the time records show several different people working on the case and no particular attorney
or clerical staff member taking any responsibility for following up on what needed to be done. This
Court has previously criticized Ostling & Associates for operating on a "tag team" basis, with client
matters simply being handed off from one person to the next with very little, if any, communication
or coordination occurring. *See In re Eskew*, 2012 WL 4866687, at *8 (Bankr. C.D. Ill. Oct. 12,
2012); *Brennan*, 2013 WL 4046447, at *7. What occurred here appears to be another example of the
problems that result when no one takes responsibility for a case and, even though it is clear what
needs to be done to resolve a client's problem, no one is actually charged with discussing the issue
with the client and getting the problem fixed.

Similarly, no explanation is provided in the narrative as to why the Amended SOFA was

filed. Mr. Follmer admits now that it was "a mistake in judgment" for him to file the Amended SOFA but blames the filing on Mr. Nelson saying that Mr. Nelson had prepared the Amended SOFA — a factual allegation that the time records do not support — and that Mr. Follmer merely filed it. But Mr. Follmer has thirty years of practice experience and, at the time the case was filed, Mr. Nelson had only been licensed for a few months. And by the time the Amended SOFA was filed, Mr. Nelson had left Ostling & Associates and the decision about whether the Amended SOFA should be filed was solely Mr. Follmer's. Again, the problems caused by Ostling & Associates' "tag team" practice of handing off matters with no attorney taking responsibility for what needs to be done is evident here.

Finally, the reason for Mr. Follmer's multiple inconsistent representations about the problems here are not explained in the narrative. When Mr. Follmer appeared on November 12, 2013, he simply stated that an amended Schedule F needed to be filed and requested time to get it filed. When he filed the Amended SOFA, he represented that the debt owed to Ms. Troxell had been forgiven even though he had never talked to Ms. Troxell or the Debtor and had no apparent basis for making that statement. When he appeared on February 11, 2014, Mr. Follmer said that the Debtor still intended to pay the debt but Ms. Troxell did not care if it was repaid. But, again, the statements were made without any consultation with the parties involved. In his narrative, Mr. Follmer now says that the Debtor "resisted adding her mother to Schedule F" and claims that the "mother did not want to be listed as a creditor." He says he filed the Amended SOFA because it was the "desire of both the Debtor and her mother." And yet, again, Mr. Follmer represents the position of two people he never spoke to about the issues. A debtor must list all creditors on the schedules and cannot choose to list only some creditors. *See* 11 U.S.C. §521(a)(1); Fed. R. Bankr. P. 1007(b)(1). Mr. Follmer's participation in an apparent willful violation of the Code and Rules is troubling and justifies the significant reduction in fees ordered here.

-11-

To summarize, a total of 2.3 hours of Mr. Nelson's time and two hours of Mr. Follmer's time will be disallowed. At $175 per hour, the total reduction is $752.50 from attorney's fees requested of $1365. Accordingly, attorney's fees in the amount of $612.50 will be allowed.

### C. Request for Compensation of Alleged Paraprofessional Must be Denied

Reasonable and necessary services rendered by paraprofessionals are specifically included as compensable services under the Bankruptcy Code. *See* 11 U.S.C. §330(a)(1)(A); *see also In re Brooks*, 2010 WL 2044933, at *4 (Bankr. C.D. Ill. May 24, 2010); *In re Gvazdinskas*, 2010 WL 1433308, at *3 (Bankr. C.D. Ill. Apr. 8, 2010). When "the services provided by the paraprofessional represent a shift of tasks ordinarily performed by a lawyer or other professional, and the service is reasonable and necessary, the service is compensable." *In re CF & I Fabricators of Utah, Inc.*, 131 B.R. 474, 489 (Bankr. D. Utah 1991). However, if the services performed are clerical or secretarial in nature, then the work is charged to overhead and cannot be separately charged to the client. *Id.*

To determine whether a paraprofessional's work is compensable legal work, a court should "look at the kind of services that are traditionally charged to overhead, the amount of discretion allowed to the paraprofessional, the experience or education required to accomplish the assignment, the responsibility delegated to the paraprofessional and the amount of supervision retained by the professional." *Id.* at 489-90. When an applicant for professional fees seeks compensation for a paraprofessional's work, the paraprofessional's experience and qualifications must be stated. *Id.* at 493. Even if the work is, in fact, clearly legal in nature, the work is not compensable under §330 unless the person rendering the services has sufficient knowledge and expertise to perform substantive legal work. Therefore, time spent by general clerical staff advising clients, drafting documents, and the like is not compensable under §330. *Brooks*, 2010 WL 2044933, at *4; *Gvazdinskas*, 2010 WL 1433308, at *4.

There is only one paraprofessional time entry for which compensation is sought on the itemization attached to the Application. Legal assistant Jessica Wheeler charged six hours of time at $70 per hour to draft the Application.

If contemporaneous time records are being kept by Mr. Follmer and other employees at Ostling & Associates, then the compilation of the time records to prepare an itemization for attachment to a fee application is clearly work that is clerical in nature. And if the time records were properly kept as the case progressed, it is unclear why it would take a clerical worker six hours to type the Application. If contemporaneous time records are not being routinely kept by Mr. Follmer and his coworkers, then a more serious problem exists which can — and will in the future — result in further reductions in fees. *See In re Newman*, 270 B.R. 845, 847-48 (Bankr. S.D. Ohio 2001) (fees denied in their entirety where contemporaneous records not kept); *In re Pinkins*, 213 B.R. 818, 825 (Bankr. E.D. Mich. 1997) (twenty-percent reduction in fees was warranted due to bankruptcy counsel's failure to keep contemporaneous time records). But the Court need not engage in speculation here because there was no evidence presented that Ms. Wheeler has sufficient knowledge or expertise to perform substantive legal work or that the work actually performed by her was substantive legal work. Thus, Ms. Wheeler's single time entry is not compensable and the entire $420 requested for her work will be denied.

## IV. Conclusion

Attorneys are entitled to reasonable compensation for representing debtors before this Court. *Eskew*, 2012 WL 4866687, at *10. And to facilitate awarding reasonable fees in Chapter 13 cases, this Court has established a "no-look" fee. But that fee is only available when attorneys provide legal services in a timely and competent manner. When, as here, attorneys waste time and repeatedly fail to amend an admittedly inaccurate document, the "no-look" fee will not be awarded. *Id.* Mr.

-13-

Follmer's Application fails to justify anything higher than the modest award which will be allowed here.

For the reasons stated above, the Application will be granted in part and denied in part. Attorney's fees in the amount of $612.50 will be allowed, but no paraprofessional fees will be allowed. Because the Debtor paid a retainer of $1000, Mr. Follmer and Ostling & Associates will be ordered to disgorge the sum of $387.50 to the Chapter 13 Trustee.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###